MARVIN E. STEINERT and ADALA N. STEINERT, ET AL. [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Steinert v. Commissioner
Docket Nos. 22864-81, 23087-81, 5556-83, 30744-83, 13299-84, 13373-84, 13864-84, 14263-84.
United States Tax Court
T.C. Memo 1985-581; 1985 Tax Ct. Memo LEXIS 51; 50 T.C.M. (CCH) 1511; T.C.M. (RIA) 85581; November 27, 1985. Thomas W. Harris, Jr., for the petitioners in all docket Nos. except docket No. 13864-84. T. Dean Hawkins, for the petitioners in docket No. 13864-84. Theodore Garelis, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined the following deficiencies in and additions to petitioners' income taxes: Addition to Tax
Name
Docket No.
Years
Deficiency
Sec. 6651(a) [2]
Steinert
22864-81
1976
$51,545
1977
29,481
Aderholt
23087-81
1976
32,055
1977
25,972
Aderholt-
5556-83
9/30/77
39,255
Vient, Inc.
9/30/78
33,418
Stanislaus
30744-83
1976
40,800
$10,200
Housing
1977
163,200
40,800
Associates
Partnership
Bartell
13299-84
1974
4,837
1975
2,308
1976
8,982
1977
9,686
1978
9,286
Peters
13373-84
1977
33,985
1978
36,129
Wizbowski
13864-84
1977
28,854
1978
28,113
Vient
14263-84
1976
18,078
1977
17,492
*53 After concessions, the issues for decision are as follows: (1) Whether partnerships Stanislaus Housing and Sun Belt Housing engaged in bona fide purchases of a mobile home park during the taxable years in issue, which would establish their respective ownership of the property and give rise to deductible losses by petitioners who are partners in one or both of the partnerships. (2) Whether section 1461 (relating to "Liability for Withheld Tax") required Stanislaus Housing to file a return and pay the tax imposed by section 1442 (relating to "Withholding of Tax on Foreign Corporations"). (3) Whether a section 1442 tax should have been withheld at the source by Stanislaus Housing. (4) Whether Stanislaus Housing is liable for the section 6651(a) addition to tax for failure to file Form 1042 (Annual Return of Income Tax to be Paid at Source). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. The following petitioners are individuals who resided in California at the time of the filing of their petitions herein and who timely filed joint returns for the years in issue with the *54 Internal Revenue Service Center, Fresno, California: Petitioners
Docket No.
Marvin E. and Adala N. Steinert
22864-81
Herbert and Helen Aderholt
23087-81
Lawson W. and Lavella J. Bartell
13299-84
Alfred G. and Marilyn G. Peters
13373-84
Raymond V. and Barbara Wizbowski
13864-84
Douglas G. and Darlene J. Vient
14263-84
Petitioner Aderholt-Vient, Inc. (Aderholt-Vient), docket No. 5556-83, is a corporation with its principal place of business in California. It filed U.S. Corporate Income Tax Returns for the taxable years ended September 30, 1977, and September 30, 1978. Petitioner Stanislaus Housing Associates Partnership (Stanislaus Housing), docket No. 30744-83, is a California partnership with its principal place of business in California. It filed U.S. Partnership Returns in 1976 and 1977. The Property
Plaza del Sol Mobile Home Park (the Property) is a mobile home park located in Tucson, Arizona. On December 28, 1976, the fair market value of the Property was $2,690,000. On July 15, 1977, the fair market value of the Property was $2,830,000. On August 29, 1978, the fair market value of the Property was $2,900,000. The Partnerships In *55 Issue
Plaza del Sol, A Limited Partnership (Plaza del Sol), was formed in California on July 1, 1976. The partnership agreement, which was recorded on October 8, 1976, provided for the following partners, percentages of profits and losses, and contributions: Percentage of
General Partner
Profits and Losses
Contribution
Lloyd Biggs
Limited Partners
Thomas W. Harris, Jr.
33 1/3%
$ 100
Ray Baldridge
6 2/3%
20,000
Baldridge Farm, Inc.
26 2/3%
80,000
Mike Keedy
33 1/3%
50,000
100 %
$150,100
None of these partners are petitioners herein. Stanislaus Housing is a California general partnership. The partnership agreement, which has not been recorded, states that business commenced on December 15, 1976. The partnership's returns state that business commenced on September 30, 1976. Stanislaus Housing has not filed a Form 1042 (U.S. Annual Return of Income Tax to be Paid at Source) relating to 1976 or 1977. The partners and their capital contributions are listed in the partnership agreement as follows: Partners
Capital Contribution
Herbert Aderholt (petitioner)
$ 25,000
Doug Vient (petitioner)
9,000
Lawson Bartell (petitioner)
6,000
Steinert-Harris (a partnership
25,000
composed of two 50 percent
partners, petitioner Marvin E.
Steinert and Thomas W. Harris, Jr.)
Aderholt-Vient, Inc. (petitioner)
35,000
$100,000
*56 Sun Belt Housing, a California general partnership, was formed on July 1, 1977. The partnership agreement has not been recorded. The partners and their interests are listed in the partnership agreement as follows: Ownership
Partners
Percentage
Warren and Melda Johnson
25%
Raymond and Barbara Wizbowski (petitioners)
20%
Alfred and Marilyn Peters (petitioners)
5%
Stanislaus Housing (petitioner)
20%
Spokane/Greenwich, a general
25%
partnership
William and Genevieve Thornton
5%
100%
Petitioner Lawson Bartell became a partner in Sun Belt Housing on July 1, 1977. These three partnerships -- Plaza del Sol, Stanislaus Housing, and Sun Belt Housing -- have much in common: (1) all three partnerships were formed by attorney Thomas W. Harris, Jr. (Harris); (2) all three partnership agreements were drafted by Harris' law firm, Harris & Bagdasarian Law Corporation, which during the years in issue was composed of only two shareholders, Harris and Gary Bagdasarian; (3) all the important accounting decisions for each partnership were made by Harris, based upon consultation with Daniel Sugimoto, a C.P.A. who prepared returns for all three partnerships as *57 well as for Harris personally; (4) the books of account for all three partnerships were maintained by Harris; (5) the bookkeepers were under Harris' control; (6) Harris signed all three partnerships' partnership returns on behalf of the partners; and (7) Harris was a partner in all three partnerships, either directly or through partnership tiers. The Transactions in Issue
Beneficial Standard Mortgage Investors (BSMI), a California real estate investment trust, owned the Property prior to June 22, 1976. BSMI was not formed by Harris or his law firm and is not related to Harris or any of the petitioners herein. On June 22, 1976, BSMI and Harris executed an agreement whereby BSMI sold the Property to Harris. The purchase price of the Property was $2,700,000. Harris agreed to pay $100,000 on or before the close of escrow and to execute a Promissory Note for the balance ($2,600,000). The note would be secured by a first in priority Deed of Trust covering the Property and a Security Agreement covering the included personal property. The note would provide for interest at 6 percent per annum during the first 12 months and 10 percent per annum during the next 9 years. The remaining *58 balance of unpaid principal and accrued and unpaid interest would be due and payable on the 10th anniversary of the note. Pursuant to this agreement, Harris executed the requisite Promissory Note, Deed of Trust, and Security Agreement. The Deed of Trust designated Harris as trustor and contains the following clause: (20) Trustor shall not execute any mortgage or deed of trust covering all or any portion of the property secured hereby or sell, convey, transfer or otherwise encumber any portion of the property secured hereby. In the event any portion of the foregoing is determined by a court of competent jurisdiction to be unenforceable, Trustor shall not perform any of said acts without giving Beneficiary ten (10) days prior written notice thereof. The Deed of Trust and a Warranty Deed, which transferred title to Harris, were recorded on July 21, 1976. On February 18, 1978, BSMI and Harris modified the Promissory Note to provide that, for forgiveness of a certain amount of interest, Harris would thereafter make quarterly payments. BSMI accrued interest payments from Harris of $69,192.53 in 1976, $199,135.54 in 1977, and $257,310 in 1978. In December 1978, BSMI notified *59 Harris that it had assigned its interest in the Promissory Note as modified to Continental Illinois National Bank and Trust Company of Chicago (Continental). On December 18, 1978, Harris signed an estoppel certificate for the benefit and protection of Continental. In that certificate, Harris expressly represented that he was the legal maker of the June 22, 1976, Promissory Note given to BSMI and secured by the Deed of Trust and the Security Agreement. On September 10, 1980, Continental acquired a Trustee's Sale Guarantee from Pioneer National Title Insurance Company. That document states that title to the Property as of September 10, 1980, was vested in "THOMAS W. HARRIS, JR., AS HIS SOLE AND SEPARATE PROPERTY" subject, however, to certain exceptions, including a tax lien and a judgment lien against Harris and his wife, Glenda Harris. Plaza del Sol is not mentioned in any of the documents or agreements between BSMI, Harris, and Continental; nevertheless, it treated the transaction as if it were the purchaser of the Property from BSMI on June 22, 1976. In its books of account, Plaza del Sol accrued interest in 1976 to BSMI at the rate of 10 percent. On December 23, 1976, Plaza *60 del Sol executed a Long Form Security (Installment) Land Contract With Power of Sale, purporting to sell the Property to World Realty Systems, Inc. (World Realty), a Cayman Islands corporation. This document was never recorded. The purchase price of the Property was $3,100,000. Interest accrued at 8 percent per annum on the remaining unpaid principal balance, and installment payments of $22,754 were due monthly. Those payments would be credited first to the interest due on the then remaining unpaid principal balance and then to the reduction of the unpaid principal balance. In this transaction, Harris acted on behalf of both the seller and the buyer. He unilaterally set the terms of purchase, including the price, and his law firm drafted the agreement. Also, there were no appraisals of the Property on or about the date of the transaction by Plaza del Sol or World Realty, and World Realty never acquired legal title to the Property. The agreement was executed by Harris on behalf of World Realty and by general partner Lloyd Biggs (Biggs) on behalf of Plaza del Sol. Harris signed the agreement as World Realty's attorney in fact; however, he was never paid for his services, nor *61 did he ever communicate with World Realty regarding the purchase of the Property. Biggs was the brother-in-law of Harris' brother-in-law. Biggs worked for a management company, Calamity Corporation, which worked for Harris. Harris once owned all of the stock of Calamity Corporation, but he later sold it to Biggs and Weersing, Harris' ex-father-in-law. Outside of the transactions in issue, World Realty engaged in no activities within the United States. Also, World Realty did not elect under section 882(d) to treat items of income derived from real property in the United States as income which is effectively connected with the conduct of a trade or business within the United States. On December 28, 1976, Harris executed a Long Form Security (Installment) Land Contract With Power of Sale, on behalf of World Realty purporting to sell the Property to Stanislaus Housing. This document was never recorded. The purchase price of the Property was $5,440,000. For the first 60 months, "interest only at Ten percent (10%) per annum on the principal balance of * * * $3,800,000" was payable in monthly installments of $45,333.33. Thereafter, interest accrued on the remaining unpaid principal *62 balance at 8 1/2 percent per annum, and installment payments of $43,792 were due monthly. Each payment would be credited first to interest on the remaining unpaid principal balance and then to the reduction of the unpaid principal balance. As in the transaction 5 days earlier, Harris acted on behalf of both the seller and the buyer. He unilaterally set the terms of purchase, including the price; he signed the original on behalf of both the seller and the buyer; and his law firm drafted the agreement. There were no appraisals of the Property on or about the date of the transaction by World Realty or Stanislaus Housing, and Stanislaus Housing never acquired legal title to the Property. Harris did not communicate the events to World Realty. Also, Harris had already planned this sale at the time of the December 23, 1976 sale. On its 1976 partnership return, Stanislaus Housing reported that the Property was acquired on October 1, 1976; it accrued interest from October 1, 1976; and it deducted a full year of straight line depreciation. On July 15, 1977, Stanislaus Housing executed a Non-Recourse Long Form Security (Installment) Land Contract With Power of Sale, purporting to sell *63 the Property to Sun Belt Housing. This document was never recorded. The purchase price of the Property was $5,800,000. Interest at 10 percent was payable in quarterly installments for 4 years; then principal would be reduced on a 30-year amortization schedule at 10 percent interest. As in the two transactions 7 months earlier, Harris acted on behalf of both the seller and the buyer. He unilaterally set the terms of purchase, including the price; he signed the original on behalf of both the seller and the buyer; and his law firm drafted the agreement. There were no appraisals of the Property on or about the date of the transaction by Stanislaus Housing or Sun Belt Housing, and Sun Belt Housing never acquired legal title to the Property. Pursuant to the sales contract, Sun Belt Housing was obligated to pay interest to Stanislaus Housing in the amounts of $268,541 in 1977 and $580,000 in 1978. Sun Belt Housing's books of account show interest payments to Stanislaus Housing in the amounts of $203,795 in 1977 and $284,269 in 1978. Stanislaus Housing's books of account show interest from Sun Belt Housing in the amounts of $198,102 in 1977 and $234,667 in 1978. Stanislaus Housing's *64 partnership returns report interest income from Sun Belt Housing in the amounts of $239,250 in 1977 and $522,000 in 1978. Among Plaza del Sol, World Realty, Stanislaus Housing, and Sun Belt Housing, there were never demands of payments, statements of account of amounts due, or reconciliations of account balances, relating to the purported sales. Sun Belt Housing did not make actual payments to Stanislaus Housing; Stanislaus Housing did not make actual payments to World Realty except for one payment of $37,500 in 1977; and World Realty did not make actual payments to Plaza del Sol. Instead, each partnership made payments directly to BSMI during the period it purportedly owned the Property. However, journal entries were entered in the partnerships' books of account as if payments were made directly from one partnership or entity to another. In each of the purported sales between these entities, the seller and buyer agreed that upon recordation of the contract, they would transfer their rights and interests to a trustee for purposes of securing their respective obligations under the agreement. There is, however, no evidence that such transfers took place. The agreements also provided *65 that each seller would deliver to its buyer a grant deed of the Property when all the payments had been made, and if the buyer requested, the seller would deliver the grant deed to the trustee to hold until the conditions had been satisfied. The individual petitioners herein who were partners in Stanislaus Housing or Sun Belt Housing or both knew very little about their partnerships' activities, i.e., (a) they did not investigate the history or value of the Property, (b) some did not know from whom their partnership acquired the Property and (c) some did not know to whom they subsequently sold their partnership interests. Instead, they relied on Harris to take care of these matters. Sun Belt Housing's partnership return for 1979 reported a sale of the Property to Harris for $6,000,000 on November 22, 1979. On November 23, 1979, Harris executed an Agreement of Purchase and Sale Land Contract to sell the Property to P.D.S. Partners for $12,001,000. A Memorandum of Agreement Land Sale Contract dated December 28, 1979, was recorded on April 22, 1980.None of the partners of P.D.S. Partners are petitioners herein. P.D.S. Partners' Certificate of Limited Partnership was dated November 23, 1979, and *66 recorded on December 31, 1979. P.D.S. Partners never appraised the Property. Concurrent with this sale, Harris leased the Property from P.D.S. Partners. In 1980, Harris paid rent of $720,000 to P.D.S. Partners and received interest and expense reimbursements of $960,000 from P.D.S. Partners. On January 7, 1983, P.D.S. Partners executed a quit-claim of the Property to Harris which was recorded on January 14, 1983. On January 17, 1983, Harris executed a quit-claim of the Property to Plaza del Sol Partners, a California general partnership which had two partners at the time, Harris and his wholly owned corporation, Constellation Properties. This document was recorded on January 24, 1983. On January 21, 1983, Harris sold the Property to an unrelated party, Plaza del Sol Ltd., a California limited partnership, for $6,000,000. Plaza Del Sol Ltd. received a Warranty Deed transferring title to the Property from "Plaza del Sol Partners, a partnership, AKA Plaza Del Sol Mobile Home Park, and Kenneth K. Kasmrath, as Trustee in bankruptcy of the estate of Plaza del Sol Partners AKS [sic] Plaza Del Sol Mobile Home Park." The warranty deed, a "Deed of Trust and Assignment of Rents" and *67 a "Deed of Trust" were recorded on January 26, 1983. On their income tax returns for the years in which Stanislaus Housing purportedly owned the Property, petitioners Steinert, Aderholt, Aderholt-Vient, Inc., Bartell and Vient deducted proportionate shares of the partnership's depreciation and interest expenses. On their income tax returns for the years in which Sun Belt Housing purportedly owned the Property, petitioners Bartell, Peters and Wizbowski deducted proportionate shares of the partnership's depreciation, interest, repairs, and bad debt expenses. Petitioners Bartell also reported partnership losses for 1977 and 1978 from Plaza del Sol; however, they have conceded that they were never partners in this partnership. Respondent disallowed the claimed deductions; he asserted that neither Stanislaus Housing nor Sun Belt Housing ever owned the Property because the purported sale of the Property to each partnership was a sham transaction without economic reality. Respondent also issued a notice of deficiency to petitioner Stanislaus Housing. He determined that should the purported sale of the property to Stanislaus Housing from World Realty be determined a bona fide transaction *68 and not a sham, Stanislaus Housing should have filed the return required by section 1461 and paid a withholding tax under section 1442 on the interest actually or constructively paid to World Realty. Further, since Stanislaus Housing did not file this return or pay this tax and did not show reasonable cause for its failure to do so, respondent determined an addition to tax under section 6651(a). OPINION In , we held that the purported sale of an apartment building was a "sham in substance." We defined "'sham in substance' as the expedient of drawing up papers to characterize transactions contrary to objective economic realities and which have no economic significance beyond expected tax benefits." . Our finding of sham in that case was based on absence of transfer of legal title or other indicia of arm-'s-length dealing, drastically inflated "sales" prices, and complete disregard of the contractual terms by the parties to the purported sales. In Falsetti, the taxpayers were partners in a partnership, *69 whose purported purchase of the apartment building was one of several purported transfers of the property. As in the present case, those transfers were arranged by Harris. He represented both the sellers and the buyers, and he unilaterally defined the terms of purchase, including the prices, which were substantially higher than the property's fair market value. The partnership in issue never acquired title to the property and never sought an appraisal of the property. The sales contract in issue was executed by Harris and general partner Biggs, who were related personally and professionally, and the agreement was never recorded. The partners, who knew very little about their partnership's activities, sought to deduct depreciation and interest expenses relating to their partnership's purported ownership of the property. Although the facts in the consolidated cases herein indicate several purported sales of the Property, the deficiencies arise only out of the purported sales to Stanislaus Housing on December 28, 1976, for $5,440,000 and to Sun Belt Housing on July 15, 1977, for $5,800,000 (Sales in Issue). In reaching our determination, however, we consider all of the purported *70 transfers. The particular circumstances surrounding the Sales in Issue show that the transactions lacked economic reality. In each transaction, Harris represented the parties and was himself a party in interest on both sides; he unilaterally set the terms of purchase, including the price; he executed each contract on behalf of both buyer and seller; and his law firm drafted the agreement. Thus, the transactions were not at arm's length. Appraisals were not obtained; legal title never passed; [3] with one exception, money never passed between the entities; no documents relating to the transactions were recorded; and the petitioners knew very little about their partnership's activities but relied on Harris. Furthermore, the sellers represented in each transaction an ability to transfer title by grant deed; however, none of the sales contracts recognized the prior and continuing encumbrance on the Property by BSMI. *71 Here, as in Falsetti, we find drastically inflated sales prices. For example, the purchase price of the Property climbed from $3,100,000 on December 23, 1976, to $5,440,000 on December 28, 1976. This $2,340,000 increase represents an appreciation of approximately 75 percent in just 5 days. At trial, Harris testified that this was due to contract terms and conditions and "future appreciation." Harris, however, did not elaborate on this point in the briefs he filed on behalf of petitioners represented by him, and we find nothing in the terms and conditions of any of the contracts which justifies such an enormous price increase in so short a period. Also, the fact that Harris knew when he arranged the $3,100,000 sale that he would resell the Property for $5,440,000 5 days later defies economic reality. Another example which is even more "drastic" and economically unrealistic is Harris' sale of the Property for $12,001,000 on November 23, 1979, one day after he purchased it for $6,000,000. We have found as facts that the fair market value of the Property was $2,690,000 on December 28, 1976; $2,830,000 on July 15, 1977; and $2,900,000 on August 29, 1978. These determinations *72 are based on an appraisal by respondent's expert witness, which was unrefuted, and an appraisal performed on August 29, 1978, at the request of Harris. [4] Based on this evidence, the purchase prices of the Sales in Issue were more than double the Property's fair market value. Various discrepancies surrounding the transactions show disregard for accuracy and businesslike formalities and suggest that the Sales in Issue were shams. Plaza del Sol accrued interest to BSMI in 1976 at 10 percent while the BSMI contract required interest in 1976 at 6 percent. Petitioners Bartell deducted partnership losses from Plaza del Sol, although they were never partners. World Realty purportedly sold the Property to Stanislaus Housing on December 28, 1976; however, the partnership returns of Stanislaus Housing reported October 1, 1976, as the date of acquisition. The 1976 partnership return also reported accrued interest from October 1 and deducted a full year's depreciation. The sales agreement is internally *73 inconsistent; it provides for interest at 10 percent per annum on $3,800,000 equal to $45,333.33 per month; however, $45,333.33 is actually 10 percent per annum on $5,440,000. Furthermore, Stanislaus Housing's partnership agreement states that business commenced on December 16, 1976, but its returns state that business commenced on September 30, 1976. As regards the purported sale from Stanislaus Housing to Sun Belt Housing, different amounts of interest due Stanislaus Housing for 1976 and 1977 were reported on the sales contract, Sun Belt's books of account, Stanislaus Housing's books of account, and Stanislaus Housing' partnership returns. The apparently arm's-length, recorded transactions between Harris, BSMI, and Continental treat Harris as the sole owner of the Property from June 22, 1976 through 1978, well after the dates of the Sales in Issue. In the Deed of Trust for the benefit of BSMI, Harris agreed not to sell, transfer or encumber the property, and if such restriction is judicially deemed unenforceable, he must provide 10 days prior written notice before so transacting. The record contains no such notice.Also, BSMI accrued interest from Harris from 1976 through 1978. *74 In 1978, BSMI and Harris modified the terms of the note. In December of 1978, BSMI notified Harris that its interest had been assigned to Continental. Harris then certified to Continental that he was the legal maker of the Note, Deed of Trust, and Security Agreement to BSMI on June 22, 1976. Thereafter, Harris provided Continental with an appraisal of the Property. None of the documents pertaining to these transactions indicates or even suggests that Harris is acting on anyone's behalf other than his own, and his unsupported testimony to the contrary is unpersuasive. Finally, the chain of purported transfers is defective because there is no contract or other evidence to the effect that Plaza del Sol purchased the property. The documents in evidence include a sale from BSMI to Harris and a purported sale from Plaza del Sol to World Realty but no such transaction from Harris to Plaza del Sol. The facts of this case are indistinguishable from Falsetti. Following Falsetti and the authorities cited therein, we conclude that the purported sales to Stanislaus Housing and to Sun Belt are sham transactions. Accordingly, petitioners are denied deductions for interest, depreciation, *75 bad debts, and repairs which were claimed in respect of their partnerships' purported ownership of the Property. Even though we hold that the Sales in Issue were shams, we recognize that petitioners' partnerships made actual payments during the periods they purportedly owned the Property. As a result, petitioners might argue that some portion of these payments constituted deductible interest. Each partnership purported to obligate itself to make installment payments composed of principal and interest to its purported seller. Journal entries were recorded in the books of account of Plaza del Sol, Stanislaus Housing, and Sun Belt Housing as if such payments were made. However, with the exception of one payment in 1977 by Stanislaus Housing to World Realty, these installments were paid directly to BSMI, and then only during the period that each partnership purportedly owned the Property. The purported outstanding obligations were never fulfilled. Thus, the partnerships did not incur valid debt obligations on the purported sales; in substance, petitioners' partnerships were making payments to BSMI on an obligation that was not theirs but rather Harris'. "It has long been established *76 that for interest to be deductible under section 163(a), the interest must be on the taxpayer's own indebtedness, not the indebtedness of another." , affg. a Memorandum Opinion of this Court. Because we have held that the Sales in Issue were shams and that the partnerships never incurred valid debt obligations, there is no basis for holding that Stanislaus Housing is liable under section 1442 for withholding tax on its purported interest payments to World Realty or under section 6651(a) for an addition to tax for failure to file a Form 1042. In view of concessions by certain parties, Decisions will be entered under Rule 155 in docket Nos. 22864-81, 23087-81, 13299-84, and 14263-84.
Decisions will be entered for the respondent in docket Nos. 5556-83, 13373-84, and 13864-84.
Decision will be entered for the petitioner in docket No. 30744-83.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Herbert Aderholt and Helen Aderholt, docket No. 23087-81; Aderholt-Vient, Incorporated, docket No. 5556-83; Stanislaus Housing Partners, docket No. 30744-83; Lawson W. Bartell and Lavella J. Bartell, docket No. 13299-84; Alfred G. Peters and Marilyn G. Peters, docket No. 13373-84; Raymond V. Wizbowski and Barbara Wizbowski, docket No. 13864-84; and Douglas C. Vient and Darlene J. Vient, docket No. 14263-84.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. Petitioners, like the taxpayers in Falsetti, argue on brief that during the years in issue an installment sale land contract was a proper mechanism for transferring equitable title. As stated in Falsetti,↩ it is unnecessary to accept or reject this representation since we hold that the Sales in Issue are shams.
4. At this time BSMI had transferred its interest to Continental. There was a dispute with Continental, and Harris testified that "we needed to prove what the value of the park was."↩